<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| OTOKI AMERICA, INC., f/k/a<br>OTTOGI AMERICA, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>OTG NEW YORK INC.,<br><br>　　　　　　　Defendant. | Case No. 2:25-cv-18005 (BRM) (JRA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Otoki America, Inc., f/k/a Ottogi America Inc.'s ("Otoki America") Motion to Dismiss ("Motion") certain counterclaims (ECF No. 16) in Defendant OTG New York Inc. ("OTG") and Soonsik Choi's ("Choi") Answer (ECF No. 4). OTG opposes the Motion (ECF No. 17), and Otoki America filed a Reply (ECF No. 18). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause having been shown, Otoki America's Motion is **DENIED**.

I.　　**BACKGROUND**

　　A.　**Factual Background**[1]

For purposes of this motion to dismiss OTG's first three counterclaims, the Court accepts the factual allegations in OTG's Answer and its first three crossclaims as true, and the Court draws all inferences in the light most favorable to OTG. *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d

---

[1] All citations to the record in this Opinion refer to this case (25-18005) unless otherwise noted.

651, 653 (3d Cir. 2003).

Around 2008, OTG served as the exclusive distributor for Otoki America's products in the eastern United States. (ECF No. 4 at 7.) "Over the course of approximately seventeen . . . years, OTG[] invested millions of dollars in specialized warehousing, logistics infrastructure, marketing[,] and the hiring and training of personnel specifically to grow [Otoki America's] brand." (*Id.*) OTG's efforts helped Otoki America generate "over $15 million in annual sales in recent years, with total lifetime sales exceeding $130 million." (*Id.*) "Throughout this term, OTG was substantially dependent on [Otoki America] products, which constituted the vast majority of OTG's revenue." (*Id.*)

Otoki America and OTG entered into a written distribution agreement around June 1, 2019.[2] (*Id.*; ECF No. 1-1.) According to OTG, in "late 2023 and early 2024," Otoki America sought to "destroy OTG's business and seize its established market share." (ECF No. 4 at 8.) Otoki America "abruptly increased prices" and "tightened payment terms without regard to the parties' long-standing course of dealing." (*Id.*) On February 29, 2024, Otoki America issued a "notice of non-renewal effective May 31, 2024." (*Id.*)

Around June 2024, Otoki America ceased supplying goods to OTG and "secretly recruited and hired" Chang Hyun Lee ("Lee"), who served as OTG's sales manager and director for over a decade and possessed intimate, proprietary knowledge of OTG's operations. (*Id.*) Otoki America "direct[ed] or encourage[d]" Lee to misappropriate OTG's confidential information, including proprietary customer lists, pricing structures, and historical sales data, which Otoki America utilized to directly target OTG's customer base to facilitate its plan to bypass OTG. (*Id.*)

---

[2] OTG admits "a security agreement and personal guaranty exits." (ECF No. 4 at 2.) Defendant Soonsik Choi "denies personal liability beyond the express and lawful scope of the guaranty," but in so doing, implicitly admits to having had at least some "obligation[s]" under the guaranty. (*Id.*)

2

A month later, Otoki America "unilaterally" contacted OTG's long-standing dealer-customers. (*Id.* at 9.) Otoki America directed these dealer-customers to remit payments directly to Otoki America rather than to OTG for merchandise that OTG had already sold, delivered, and invoiced in the ordinary course of business.[3] (*Id.*) As a result of this conduct, OTG has been unable to collect outstanding customer invoices totaling "at least $382,395.00." (*Id.*) Additionally, OTG has been left with "inventory that could not be timely sold, resulting in spoilage and expiration losses of at least $766,861.00." (*Id.*)

### B. Procedural History

#### 1. *OTG New York, Inc. v. Ottogi America, Inc.* ("2024 Action")

Prior to the filing of this action, on June 24, 2024, OTG filed its own separate but related Complaint against Otoki America, alleging

> (1) unfair and deceptive business practices, including a violation of the New Jersey Franchise [Practices] Act ("NJFPA") (N.J. Stat. § 56:10-3(a)), which prohibits franchisors from terminating a franchise relationship without good cause and without providing the franchisee a reasonable opportunity to remediate alleged deficiencies; (2) breach of contract for [Otoki America]'s termination of the Agreement; (3) tortious interference with business relations, for adopting OTG's businesses and customers without compensation; (4) promissory estoppel, as OTG reasonably, foreseeably, and detrimentally relied on [Otoki America]'s promises regarding the length and nature of the Agreement; (5) unjust enrichment, as OTG invested resources in establishing [Otoki America]'s brand, without compensation after termination of the Agreement; and (6) declaratory judgment that [Otoki America]'s termination of the Agreement was unlawful and that OTG remains the exclusive distributor of [Otoki America]'s products on the East Coast.

*OTG N.Y., Inc. v. Ottogi Am., Inc.*, Civ. A. No. 24-07209, 2025 WL 957407, at *2 (D.N.J. Mar.

---

[3] According to OTG, Otoki America "undertook this conduct without legal process, without assignment, and without judicial authorization, despite knowing OTG[] was the seller of record." (ECF No. 4 at 9.)

31, 2025) (internal citations omitted) (Martinotti, J.).

On August 15, 2024, Otoki America moved to dismiss OTG's Complaint. (24-cv-07209, ECF No. 12.) OTG filed an Opposition on August 26, 2024, and Otoki America filed a Reply on September 9, 2024. (24-cv-07209, ECF No. 13.) On March 31, 2025, this Court denied Otoki America's motion to dismiss. (24-cv-07209, ECF No. 14.) As of the issuance of this Opinion, the case remains active and pending before this Court.[4]

### 2. *Otoki America, Inc. v. OTG New York, Inc.*

On November 26, 2025, Otoki America filed a Complaint against Defendants OTG and Choi (together, the "Defendants").[5] (ECF No. 1.) As part of its Answer, filed on December 26, 2025, OTG asserted the following counterclaims against Otoki America: violations of the NJFA ("Counterclaim I"), breach of contract ("Counterclaim II"), tortious interference with business relations ("Counterclaim III"), misappropriation of trade secrets ("Counterclaim IV"), unfair competition ("Counterclaim V"), and conversion ("Counterclaim VI").[6] (ECF No. 4.)

On January 30, 2026, pursuant to this Court's judicial preferences, Otoki America requested a pre-motion conference in anticipation of its motion to dismiss Counterclaims I–III. (ECF No. 9.) Defendants replied to the pre-motion letter on February 9, 2026. (ECF No. 12.) On

---

[4] On March 23, 2026, the Hon. José R. Almonte, U.S.M.J, ordered the parties to "focus their efforts on completing discovery" in *Otoki America, Inc. v. OTG New York, Inc.* "so that summary judgment motions as to both" the 2024 Action and *Otoki America, Inc. v. OTG New York, Inc.* "will be filed simultaneously within one submission." (24-cv-07209, ECF No. 60.) Judge Almonte issued a similar order three days earlier, in *Otoki America, Inc. v. OTG New York, Inc.* (ECF No. 19 ("The parties shall expeditiously engage in discovery in order to complete all outstanding discovery by the operative deadlines. Upon the completion of discovery, the Court will discuss the filing of summary judgment motions in this matter and [the 2024 Action].").)

[5] Choi is not a party in the 2024 Action.

[6] While OTG and Choi are both defendants, the counterclaims Otoki America are only asserted by OTG. (ECF No. 4 at 7.)

February 11, 2026, this Court "determined a premotion conference would not be beneficial" and ordered "the parties [to] proceed with motion practice in accordance with the Rules of Court." (ECF No. 13.) Otoki America filed a Motion to Dismiss Counterclaims I–III on February 18, 2026. (ECF No. 16.) Defendants filed an Opposition on March 2, 2026. (ECF No. 17.) On March 9, 2026, Otoki America filed a Reply. (ECF No. 18.)

## II.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), the standard of review for a motion to dismiss a crossclaim is the same standard of review as a motion to dismiss a complaint or any other "claim for relief." Under Rule 12(b)(6), the court limits its review to the facts of the claim. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the nonmoving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a crossclaim is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The inquiry is not whether [a] [crossclaimant] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002).

However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rule 8's pleading standard applies to crossclaims made pursuant to Rule 13(g). *See Mathis v. Camden Cnty.*, Civ. A. No. 08-6129, 2009 WL 4667094 (D.N.J. Dec. 3, 2009) (applying Rule 8 as interpreted by the Supreme Court in *Iqbal* and *Twombly* to crossclaims); *see also Conn. Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 623 (1st Cir. 1988) (applying Rule 8 to a crossclaim asserted

5

pursuant to Rule 13(g)); *Ford Motor Co. v. Edgewood Props.*, Civ. A. No. 06-4266, 2008 WL 4559770, at *18 (D.N.J. Oct. 16, 2008).

### III.   DECISION

Otoki America asks this Court to dismiss with prejudice or, alternatively, stay OTG's counterclaims for violations of the NJFPA, breach of contract, and tortious interference with business relations under the first-filed rule because it contends OTG's counterclaims are identical to the causes of action OTG has already asserted against Otoki America in the 2024 Action pending before this Court. (ECF No. 16-1 at 5–7.) Anticipating OTG will argue the inapplicability of the first-filed rule due to the compulsory nature of Counterclaims I–III, Otoki America suggests Counterclaims I–III are not compulsory counterclaims because these counterclaims were "the subject of another pending action."[7] (*Id.* at 7–8 (quoting Fed. R. Civ. P. 13(a)(2)(A)).) Additionally, anticipating OTG's argument that dismissal of Counterclaims I–III would prejudice Defendant Choi, Otoki America argues "Choi's status as a defendant in [Otoki America]'s collection action [h]as no bearing . . . on the disposition of [OTG]'s duplicative counterclaims" because Choi is not a party in *OTG New York, Inc. v. Ottogi America, Inc.* and has not asserted counterclaims in the present action. (*Id.* at 8.)

Defendants argue the first-filed rule is inapplicable for several reasons. (ECF No. 17 at 7–

---

[7] As Otoki America correctly points out, Defendants misunderstand Otoki America's anticipatory argument. (ECF No. 18 at 3.) According to Defendants, Otoki America's argument is as follows: "Rule 13(a)(2)(A) . . . is a mandatory rule of dismissal for claims a defendant legitimately raises in response to a plaintiff's new lawsuit." (ECF No. 17 at 8.) Not so. As summarized above, in its Motion, Otoki America argues Rule 13(a)(2)(A) is an "exception to compulsory counterclaims" that is applicable here. (ECF No. 16-1 at 7–8.) "[S]etting aside the Rule 13(a)(2)(A) issue," Defendants contend "Counts I–III are compulsory counterclaims because they bear a 'logical relationship' to [Otoki America's] collection claims." (ECF No. 17 at 10–12 (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961)).) Because the Court finds the first-filed rule is inapplicable on other grounds, it need not decide whether that rule is inapplicable based on whether Counts I–III are compulsory or permissive counterclaims.

9, 12–13.) First, Defendants contend the two cases are not "truly duplicative" because Counterclaims IV–VI exist only in this action. (*Id.* at 7.) Second, Defendants posit the first-filed rule is inapplicable because Otoki America filed second and placed the same distribution relationship squarely at issue. (*Id.* at 8–9.) In support of this argument, Defendants argue the "central rationale of the first-filed rule is absent," where "both actions are before the same [c]ourt and . . . [j]udge." (*Id.* at 8.) Third, Defendants attack Otoki America's reliance on *ScoreBoard, Inc. v. Upper Deck Co.*, 959 F. Supp. 234 (D.N.J. 1997) and *Pai v. Reynolds Foil, Inc.*, Civ. A. No. 10-1465, 2010 WL 1816256 (D.N.J. May 5, 2010) because, according to Defendants, these cases are distinguishable to the situation at hand. (*Id.* at 12–13.) Fourth, as OTG predicted, Defendants inform the Court dismissal would severely prejudice Defendant Choi, who is not a party to *OTG New York, Inc. v. Ottogi America, Inc.* (ECF No. 17 at 13–14.) Alternatively, Defendants ask this Court to stay Counterclaims I–III and consolidate the two cases. (*Id.* at 14–15.)

In Reply, Otoki America asserts the two "matters are identical" because (1) it "has only moved to dismiss Counterclaim[s] . . . I–III," (2) "[t]he only parties involved in both" the *OTG New York, Inc. v. Ottogi America, Inc.* action and the counterclaims at issue are OTG and Otoki America, and (3) Counterclaims I–III are identical to the first three counts asserted by OTG in *OTG New York, Inc. v. Ottogi America, Inc.* (ECF No. 18 at 1–2.) Otoki America also refutes the notion that "a party cannot file a second action that overlaps with an earlier suit and then invoke the first-filed rule against the defendant[']s counterclaims." (*Id.* at 3 (citing ECF No. 17 at 9).) Otoki America also suggests it is OTG that has created duplication "[b]y asserting counterclaims that are already being litigated in a separate action." (*Id.* at 4.) Additionally, Otoki America resists OTG's argument "the first-filed rule cannot be used to strip [OTG] of the right to assert all related claims" because OTG relies on *Cognizant Tech. Sols. v. Franchitti*, Civ. A. No. 21-16937, 2022

WL 2819394 (D.N.J. Jul. 19, 2022), which Otoki America argues is distinguishable. (*Id.* at 4–5.) Otoki America further points out "the first-filed rule and [Otoki America's] request relief would not strip OTG[] of pursuing its claims for alleged" violations of the NJFPA, breach of contract, or tortious interference, because OTG "is already pursuing those claims in" *OTG New York, Inc. v. Ottogi America, Inc.* (*Id.* at 5.) With respect to "mus[ings] that consolidat[ion] of the actions may be appropriate," Otoki America notes OTG "has not filed a cross-motion to consolidate pursuant to Local Rule 7.1(h)." (*Id.* at 9.)

### A. The First-Filed Rule Is Inapplicable Because Both the First- and Second-Filed Matters Are Subject to the Same Judge's Jurisdiction.

Under the first-filed rule, a district court has the discretion to "enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 386 (D.N.J. 2015) (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). "In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Wheaton Indus., Inc. v. Aalto Sci., Ltd.*, Civ. A. No. 12-6965, 2013 WL 4500321, at *2 (D.N.J. Aug. 21, 2013) (internal citations and quotations omitted). "[T]he rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C.*, 850 F.2d at 977 (internal citations omitted). "Yet, fundamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *Id.* (internal citations and quotations omitted). There are several exceptions to the first-filed rule, including: (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5) the subsequently filed action becomes further developed than the first filed action; and (6) the first party initiated suit in one forum in anticipation of the other party's imminent suit in a less favorable forum. *Id.* at 972, 977.

The parties dispute whether the first-filed rule applies to two matters before the same district court and judge. Courts in the Third Circuit have not provided a clear answer.[8] The case with the facts most analogous to those presented here is *Premier Payments Online, Inc. v. Payment Systems Worldwide*, 848 F. Supp. 2d 513, 522–23 (E.D. Pa. 2012). There, the plaintiff filed suit over a business dispute with the defendant in the District Court for the Eastern District of Pennsylvania; a month later, the defendant filed a complaint regarding the same dispute in the District Court for the Eastern District of California. *See id.* at 517–18. Following oral argument on the plaintiff's motion to stay in the first-filed suit, the parties agreed to transfer the Eastern District of California case to the Eastern District of Pennsylvania and consolidate the matters. *See id.* at 518. Thereafter, the plaintiff moved to dismiss the transferred case under the first-filed rule, which the court rejected because the parties agreed to litigate in the Eastern District of Pennsylvania. *See id.* at 519, 522–23. The court also noted "courts have applied the first-filed rule in circumstances in which coordinate district courts have concurrent jurisdiction over different cases involving the same subject matter," whereas the cases at issue were before the same judge. *Id.* at 523. These facts are similar to the present circumstances. However, the present circumstances do not include the additional step of agreeing to transfer two overlapping matters to one district court and consolidating the matters. *See Premier Payments Online*, 848 F. Supp. 2d at 518. Rather, the two

---

[8] *See, e.g., Powell v. Wetzel*, Civ. A. No. 12-02455, 2017 U.S. Dist. LEXIS 127976, at *8 (M.D. Pa. Aug. 10, 2017) ("We find it unclear, however, whether the first-filed rule also applies when, as here, duplicative lawsuits have been filed successively in the same federal court.") (collecting cases reaching different results as to the first-filed rule's application to cases pending before the same district court).

matters at issue here were both originally filed not only in the same district court but before the same judge.

Some courts in this District have recognized that the principles "behind [the] first-filed rule . . . are implicated" by cases involving the same issues and parties before the same court. *Alvarez v. Gold Belt, LLC*, Civ. A. No. 08-4871, 2009 WL 1473933, at *2–3 (D.N.J. May 26, 2009) (quoting Third Circuit's statement of principles for first-filed rule—though technically finding the rule itself inapplicable—and finding rule required staying matter until resolution of class certification issue in "fundamentally identical" case pending before different judge in same District); *see St. Paul Fire & Marine Ins. Co. v. R&Q Reinsurance Co.*, Civ. A. No. 15-5528, 2016 WL 3087379, at *3 (E.D. Pa. June 2, 2016) (interpreting Third Circuit precedent indicating "the first-filed rule may apply even where 'concurrent jurisdiction no longer exist[s],' as long as the duplicative actions were initially filed in different jurisdictions" to find first-filed rule applied where first-filed case had been transferred to district of second-filed case).

However, other courts in the Third Circuit have questioned the wisdom of this approach in "parallel actions pending before" the same federal district court. *Glunk v. Noone*, Civ. A. No. 16-01147, 2016 WL 7159221, at *2 n.3 (M.D. Pa. Dec. 8, 2016) (noting Third Circuit's precedent on first-filed rule relates solely to cases of concurrent jurisdiction and counsels against dismissing matters with prejudice on that basis and deciding motion on *res judicata* grounds for lack of "binding authority" on this issue), *aff'd*, 689 F. App'x 137 (3d Cir. 2017); *see also Elliott v. Williams*, Civ. A. No. 21-2290, 2022 WL 22907179, at *1 n.1 (E.D. Pa. May 19, 2022) (finding because other district court "exercised its discretion under the first-filed rule and transferred this

10

action to this Court, rather than dismissing it . . . applying the first-filed rule again as a grounds to dismiss the instant matter would be inappropriate").

Given the lack of clear precedent from or practice within the Third Circuit and recognizing the discretionary nature of the first-filed rule, *see Spellman*, 150 F. Supp. 3d at 386, the Court declines to apply the first-filed rule here, where both the first- and second-filed matters are subject to its jurisdiction. *See Premier Payments Online*, 848 F. Supp. 2d at 522–23; *Elliott*, 2022 WL 22907179, at *1 n.1. Accordingly, because the first-filed rule—Otoki America's sole basis for its Motion to Dismiss Counterclaims I–III—is inapplicable, the Motion to Dismiss (or, in the alternative, to stay) Counterclaims I–III is **DENIED**.[9] *See also Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220–21 (3d Cir. 2016) (holding "in the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit [because] [e]ven a dismissal *without prejudice* may create unanticipated problems" (emphasis in original)).

### B.  A Request for Consolidation Is Not Properly Before the Court.

Turning to Defendants' alternative argument requesting consolidation, the Court declines to rule on that request because Defendants fail to comport with Local Rule 42.1, which requires a "motion to consolidate two or more civil cases pending upon the docket of the Court [to] be filed in the cases bearing the earliest docket number." L.Civ.R. 42.1. To properly move the Court to

---

[9] In the alternative, Otoki America asks the Court to stay Counterclaims I–III until after resolution of *OTG New York, Inc. v. Ottogi America, Inc.* (ECF No. 16-1 at 7–8; *see also* ECF No. 18 at 12.) But Otoki America cites to no case law. Perhaps this is because Otoki America is merely proposing an alternative remedy.  (ECF No. 16-1 at 7–8); *see, e.g., Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 367 (D.N.J. 2010) ("Once a court finds that the first-filed rule applies, the Court must decide[] whether the later-filed action should be dismissed, stayed, or transferred . . . ."). Because this Court declines to apply the first-filed rule, neither dismissal nor a stay of Counterclaims I–III would be appropriate at this time. *Devorin v. Tata Consultancy Servs., Ltd.*, Civ. A. No. 24-06648, 2025 WL 1291660, at *7 (D.N.J. May 5, 2025) (Martinotti, J.) (declining to apply the first-filed rule and denying a motion to dismiss or stay overlapping claims).

consolidate the two cases, Defendants must comply with the Local Rules and do so in *OTG New York, Inc. v. Ottogi America, Inc.* (24-cv-07209).

## IV.    CONCLUSION

For the reasons set forth above, and for good cause appearing, Otoki America's Motion to Dismiss is **DENIED**. An appropriate order follows.

Date: April 10, 2026                      */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**